# WHEELING.

1873.
June Term. MORGAN VS. THE FRANKLIN INSURANCE COMPANY.

ELIJAH MORGAN, PLAINTIFF IN THE ACTION, DE-
FENDANT IN ERROR *against* THE FRANKLIN IN-
SURANCE COMPANY, DEFENDANT IN THE ACTION,
PLAINTIFF IN ERROR.

Decided July 17th, 1873.

## SYLLABUS.

1. It is competent to impeach the credit of a witness by proof that he
   has made statements inconsistent with the testimony he has given
   on the trial.

2. It is proper, to lay a foundation for impeaching the credit of a wit-
   ness, to first inquire of him, on cross-examination, whether he has
   not on some former occasion given a different account, or made a
   different statement of a matter of fact, to which he has testified on
   the trial.

3. After the denial, on cross-examination, of a witness that he has made
   such inconsistent or contradictory statement, although it is admis-
   sible, upon a principle of convenience or absolute necessity, to put

the question to the impeaching witness in the same words it had been put to the former witness, yet, it would be more satisfactory that the answer should be obtained without a direct suggestion.

1873.
June Term.

4. If the question put to the impeaching witness, is not in the same words as put to the former witness, it should, nevertheless, be relative, and sufficiently precise, so as to indicate to the impeaching witness the same subject matter or transaction, testified to by the former witness, and not so general as to introduce irrelevant and improper testimony.

5. The question propounded to the witness, Arthur, is too general, and calculated to prejudice the merits of the case by the introduction of irrelevant and inadmissible matter.

This is an action of assumpsit, brought by the Plaintiff against the Defendant, in the Circuit Court of Ohio county, to recover $1,000, the amount alleged to be "due for loss by fire, insured against by said Company," and in which there was a verdict and judgment for the Plaintiff for the amount claimed, with interest.

On the trial, a witness, Hall, for the Plaintiff, was asked, upon cross-examination, and for the purpose of impeaching his testimony, whether he had not at a certain interview with Arthur, a witness for the Defendant, told him that threats had been made to burn the mill, and of the Plaintiff's difficulties in his neighborhood, and that the insurance was obtained in consequence. To this question the witness answered, "No Sir."

The witness, Arthur, was then examined, and, after stating that he had had an interview with Hall, was asked to state what information he had received from Hall in relation to this loss. The Plaintiff, by his attorney, objected to the witness Arthur answering this question. The Court sustained the objection, and refused to permit the question to be answered, and the Defendant excepted.

This statement presents the only question considered and determined by this Court.

*Wheat* and *Lamb* for Plaintiff in error.

*Peck* and *Hubbard* for Defendant in error.

1873.
June Term.   MOORE, Judge.

Morgan
v.
Franklin
Insurance Co.   The question of demurrer having been waived in the
argument of this cause, there is but one point left for
the consideration of the Court on this appeal, and that
is the refusal of the Circuit Court to permit the witness,
N. C. Arthur, to answer the last question propounded to
him by Defendant's attorney, in the attempt to impeach
the testimony of the witness, Leonard S. Hall.

Following the current of authority, it seems to be the
established rule, that a witness cannot be cross-examined
as to any fact which is collateral and irrelevant to the
issue, merely for the purpose of contradicting him by
other evidence, if he should deny it, thereby to discredit
his testimony. And if a question is put to a witness
which is collateral or irrelevant to the issue, his answer
is conclusive, and cannot be contradicted by the party
who asked the question. Forde's case, 16 Gratt. 547.

It is competent to impeach the credit of a witness by
proof that he has made statements inconsistent with the
testimony he has given on the trial. (Idem.)

In order to lay a foundation for impeaching his testi-
mony by contradicting it, it is not irrelevant to inquire
of the witness, on cross-examination, whether he has not
on some former occasion given a different account, or
made a different statement, of a *matter of fact to which he
has testified on the trial.* (Idem.)

It is proper, if not imperative, thus to lay the founda-
tion, that truth may be obtained without taking undue
advantage of the witness. The witness is thus afforded
an opportunity to refresh his memory, and enabled to
correct the statement, if necessary, and to "explain the
nature, circumstances, meaning and design of what he is
proved elsewhere to have said." Such a rule, "pro-
ceeding from a sense of justice due the witness," is not
only well calculated to preserve the credibility of an
honest witness, but also, detect and expose the dishonest

and false. 1 Greenl'f Evid. sec. 462, note 1. 12 Gratt. 484, and citations of Daniel, J. therein.

In the case before us, these principles were closely adhered to in the examination of Hall, laying the foundation for impeachment. The difficulty in the case is such as frequently arises, and that is, as to the form of the last question propounded to the impeaching witness, Arthur. After the denial, on cross examination, of the witness that he had made such inconsistent or controdictory statement, what should be the form of the question put to the impeaching witness? Should it be in the identical language of the question put to the denying witness, or should it be of a general nature, sufficiently precise as to point out the subject matter without indicating the answer?

In a case at Nisi Prius, Hallett vs. Cousens, reported in 2 Moody and Robinson, 238, 239, for malicious prosecution on a charge of felony, a witness was asked, on cross examination, whether he had not used certain expressions in a conversation which took place between the plaintiff and defendant, and in which the witness took part. The witness denied using the expressions. A witness was called to prove he had used the expressions, and on the counsel for defendant reading from his brief the very words which the witness had denied having used, ERSKINE J. interposed and said, "That the counsel was not entitled so to lead his witness; that the rule had been misunderstood; that it did not apply to conversations which were evidence in themselves. The object in allowing particular words to be put to the witness, is to exclude the other parts of the conversation which are not evidence when made in the absence of the parties. In this case the examination must proceed in the usual way, by asking what passed."

I appreciate the distinction thus made by the learned Judge, and hold that where the statements denied are parts of conversations, or connected with facts, evidence

in themselves, the question should be general; because they are not simply for the purpose of discrediting the witness, but to prove the issue joined, and conclude the merits of the case, and therefore the courts, in such cases, should not justify a departure from the general principle, that *leading questions*, such as suggest to the witness the answer, are not to be asked.

It is proper to lead the mind of the witness to the subject of inquiry, in order to prevent irrelevant and inadmissible matter; but the court must watch with critical eye every move thus made, not only to protect the ignorant or unsuspecting witness, but to check the fraudulent and the willing. But in leading the mind of the witness contradicting, care must be taken that he testifies to the identical account, statement or conversation upon which the other witness had been cross examined, and had denied. In general, it seems to me, the question should not be *ipsissimis verbis*, which were put to the witness on cross examination; but there are cases where it has been sanctioned as correct practice; and Mr. Starkie, in his treaties on evidence, says: "Where a witness is called in order to contradict the testimony of a former witness, who has stated that such and such expressions were used, or such and such things were said, it is the usual practice to ask whether those particular expressions were used, or those things were said, without putting the question in a general form by inquiring what was said. If this were not to be allowed, it is obvious that much irrelevant and inadmissible matter would frequently be detailed by the witness." Stark. Ev'd, pp 169, 170. "So where a witness is called to prove affirmatively what a witness on the other side has denied, as, for instance, to prove that on some former occasion that witness gave a different account of the transaction, a difficulty may frequently arise in proving affirmatively that the first witness did make such other statement, without a direct question to that effect." Stark. Ev'd, p 170. "But," says Mr. Starkie,

"although the practice above stated is, to a certain extent, sanctioned by a principle of convenience, and although after other attempts have failed, it becomes a matter not of mere convenience but of absolute necessity so to put the question to a witness called to contradict a former one, it is plain that the convenience so attained to is purchased at the expense of some departure from a general principle, and that it would usually be more satisfactory, where that is practicable, that the desired answer should be obtained without a direct suggestion, by which a fraudulent witness might be greatly aided." Idem, 170–171.

If the question is general it should, nevertheless, be relative and sufficiently precise so as to indicate to the impeaching witness the same subject matter or transaction testified to by the former witness, and not so general as to introduce irrelevant and improper testimony, or such as tends to affect the merits of the case instead of impeaching the former witness.

Now, applying these principles to the question before us, I am led to the belief, that the Circuit Court, acting in its discretion, as it must necessarily act in such instances, did not err in refusing to permit the witness, Arthur, to answer the question propounded. Because, it was not on the same subject matter denied by the witness, Hall, and tended to introduce matters outside of the intended impeachment, and therefore irrelevant.

The question propounded to Hall, for the purpose of impeaching, was as follows: "Now, at this first interview that you had, before you saw Mr. Coen, at New Martinsville, I want to ask you, whether you did not tell Mr. Arthur of these threats that had been made to burn that mill, and of Col. Morgan's, (meaning the Plaintiff's) difficulties, domestic and otherwise, in his neighborhood; and, whether you did not tell him that that insurance was obtained in consequence?"

To which question, the witness, Hall, answered "No Sir."

1873.
June Term.

Morgan
v.
Franklin
Insurance Co.

The question put to the impeaching witness, Arthur, was as follows: "I want you to state to the jury and the Court, what information you received from Mr. Hall in relation to this loss?"

The question is not such as would indicate the statements intended to be contradicted; it suggests a matter of greater latitude than that which had been suggested to the witness Hall, a general conversation which Hall had not been interrogated about, and which, therefore, could not be properly admitted for the purpose of impeaching him. If answered, it might have prejudiced the merits of the case by the introduction of irrelevant or inadmissible matter before the jury.

The Circuit Court did not, therefore, err, and its judgment should be affirmed with costs and damages.

HAYMOND, President, and PAULL and HOFFMAN, Judges, concur in the foregoing opinion.