THE SECURITY BANK OF HUNTINGTON, *a corporation*

*v.*

WILLIAM H. McGINNIS, *et al.*

(No. 12089)

Submitted September 19, 1961.   Decided November 14, 1961.

696

*Tom T. Baker*, for plaintiffs in error.

*Leo E. Oxley*, for defendant in error.

GIVEN, JUDGE:

Plaintiff, the Security Bank of Huntington, instituted a notice of motion for judgment proceeding against William H. McGinnis and Mary C. McGinnis, in the Circuit Court of Cabell County, and judgment was rendered in favor of the plaintiff for the amount claimed to be owing, being the unpaid balance of a loan made by plaintiff to McGinnises for the purchase of an Elcar house trailer. At the time of the institution of the proceeding plaintiff obtained an attachment against a "Kentuckian" house trailer, then in possession of McGinnises. Gilbert Trailer Sales, Inc., and Commerce Union Bank appeared as interveners in the proceeding, claiming rights and a lien on the Kentuckian

house trailer superior to the lien of the attachment. A jury was impaneled to try the matter pursuant to provisions of Code, 38-7-41, a finding in favor of the plaintiffs in answer to special interrogatories was returned, and judgment was entered in favor of plaintiff, adjudicating the lien of the attachment to be superior to any right or lien of the interveners.

McGinnises purchased the Elcar house trailer from Gilbert Trailer Sales, Inc., on May 2, 1959, having obtained a loan from plaintiff for the amount of the purchase price. A check in the amount of $4,000.00, representing the amount of the loan, was drawn to the order of Gilbert Trailer Sales, Inc., and delivered to the payee, with this notation written thereon: "For '59 Elcar house trailer Ser. No. ES-45B-10 W-59-1116". The loan was secured by a chattel trust deed on the trailer and a Buick automobile. The plaintiff had previously made a loan to McGinnises on the automobile and the balance owing on that loan was consolidated with the new loan. The trust deed securing the indebtedness represented by the check given for the amount of the loan, delivered to Gilbert Trailer Sales, Inc., was recorded in the office of the Clerk of the County Court of Wayne County May 5, 1959. Apparently the trust deed was recorded in Wayne County because it showed on its face that the property conveyed was located in that county, at "3509 Auburn Rd. in the City of Huntington, County of Wayne and State of West Virginia". The McGinnises did not reside, and the property was not located, at that address, but at 1602 Monroe Avenue in Huntington, which location is within Cabell County. The Auburn Road address, in Wayne County, was the address given by the McGinnises in the prior trust deed covering the automobile.

On August 25, 1959, McGinnises purchased from Gilbert Trailer Sales, Inc., the Kentuckian house trailer and, as part of the purchase price therefor, delivered to Gilbert Trailer Sales, Inc., at its place of business in Kentucky, the Elcar house trailer, and executed a con-

ditional sales contract for the balance of the purchase price of the Kentuckian house trailer, $3,994.20, payable in monthly installments. The conditional sales contract, and the indebtedness described therein, were immediately assigned to the other intervener, the Commerce Union Bank, but the contract was not recorded in Cabell County, wherein the property covered was located, until January 4, 1960, the attachment of plaintiff having been levied on the Kentuckian house trailer on December 11, 1959. Though the attachment was levied before the recordation of the conditional sales contract, the interveners contend that they have the superior lien for the reason that the plaintiff had actual notice of the existence of the conditional sales contract before the levy of the attachment.

Code, 40-3-5, provides: "Every provision in a conditional sale reserving property in the seller shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy or otherwise a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale."

We think there can be no question that actual notice of the provisions of the conditional sales contract by the plaintiff, if had prior to the recording of the conditional sales contract, would have the same effect as the timely recording of that contract. That question seems to have been definitely settled. See *Tildesley Coal Co. v. American Fuel Corporation*, 130 W. Va. 720, 45 S. E. 2d 750; *Guthrie v. Howie*, 110 W. Va. 164, 157 S. E. 168; *Commercial Credit Co. v. Oakley*, 103 W. Va. 270, 137 S. E. 13; *Brown v. Woody*, 98 W. Va. 512, 127 S. E. 325, 45 A. L. R. 945; *Triumph Electric Co. v. Empire Furniture Co.*, 70 W. Va. 164, 73 S. E. 325. Of course, where there is a substantial conflict in the evidence as to actual notice, the question of fact is peculiarly one for jury determination, and we have con-

cluded that such a conflict exists in the evidence offered herein.

William H. McGinnis, testifying as to a conversation with Francis Price, president of the plaintiff bank, R. L. Cornett, manager of the installment loan department of that bank, and Leo E. Oxley, attorney for the bank, was asked the following questions, to which he gave the following answers: "Q. Did you on that occasion inform them that you had executed a conditional sales contract making a lien on that Kentuckian? A. Yes, sir, I had to, to get the trailer. I had to have a loan on it. I didn't have the money to make up the difference. Q. And did you explain in detail to them on that occasion — A. Yes, I did, sir."

W. L. Steele, an attorney, testified concerning a meeting held at the office of Gilbert Trailer Sales, Inc., at Catlettsburg, Kentucky, in November, 1959, when the claims of the respective parties were discussed, and which meeting was attended by Mr. Gilbert of the sales agency, Harold Fraley and Mr. Oxley. Mr. Steele was asked the following questions, to which he gave the following answers: "Q. Did you on that occasion explain to Mr. Oxley that Mr. Gilbert had a conditional sales contract on that Kentuckian? A. Yes, sir, I did. Q. Would you please tell if you can remember just what conversation took place? A. Well, in our telephone conversations prior to this meeting Mr. Oxley was in a hurry to get this matter straightened out, which was only natural, and he wanted to know if I could get something done about it. And I said well, we should all get together for a meeting. I said 'I think you should bring Mr. McGinnis down, or we will come up, and we will all get together and see what is the best for everyone concerned' — And we set up this meeting, and Mr. McGinnis was supposed to be there, to meet at Mr. Gilbert's office. I had — Mr. Oxley knew prior to this meeting of our claim that we had a — that Commerce Union had a conditional sales contract on this Kentuckian. And that was the problem which had to be ironed out * * *".

Harold Fraley, a salesman for Gilbert Trailer Sales, Inc., present at the conference held in the office of Gilbert Trailer Sales, Inc., mentioned above, testified to the effect that the "folder" of Gilbert Trailer Sales, Inc., relating to the transaction, was at the conference and contained all the papers relating to that transaction. He was asked: "Was this contract exhibited to Mr. Oxley, the representative of the bank, on that occasion?"; to which he answered "Yes, it was".

Bonnie Alexander, bookkeeper for Gilbert Trailer Sales, Inc., was handed a copy of the conditional sales contract and was asked "whether or not that contract was exhibited to Mr. Oxley in November of 1959", meaning the time of the conference mentioned above, to which she answered: "A copy of this contract, yes, sir."

Mr. Price, president of the plaintiff bank, was asked the following question, to which he gave the following answer: "Now, did you have any knowledge prior to January 4, 1960, that the 1960 Kentuckian trailer was subject to a lien? A. No, sir, no knowledge whatsoever."

Mr. Cornett, the only officer of the plaintiff bank other than Mr. Price who, it is contended, had actual notice of the existence of the conditional sales contract, was asked whether he had any knowledge prior to December 11, 1959, the date of the levy of the attachment, of the existence of the conditional sales contract, to which he answered: "Yes, I did. I mean, I don't know whether you would call it knowledge or not. But I made a visit with Gilbert after uncovering this transaction. And there was no conditional sales contract — he said that some bank had a lien on the trailer. But he wouldn't tell us what bank. He wouldn't tell us anything about it." He was also asked whether Gilbert Trailer Sales, Inc., gave him "any of the details concerning any conditional sales contract that may have at that time covered the 1960 Kentuckian?", to which he answered: "No, sir, he just

made mention of the fact that some bank had it. And I didn't believe it. Because we checked the record up here and we found that there was no lien recorded in Cabell or Wayne County, so we took it for granted that there wasn't any lien." Mr. Oxley, the attorney for the plaintiff bank, did not testify.

It was contended by the plaintiff bank at the trial that there existed fraud and a conspiracy on the part of the McGinnises and Gilbert Trailer Sales, Inc., in an effort to defeat collection of the balance owing the plaintiff on the Elcar trailer. Proof of such fraud and conspiracy rests, largely at least, on the fact that the check given by the bank for the purchase price of the Elcar house trailer, with the notation written thereon mentioned above, fully informed Gilbert Trailer Sales, Inc., of the trust deed lien of plaintiff, and the action of McGinnises in moving the Elcar house trailer from the State of West Virginia, and Gilbert Trailer Sales, Inc., with such knowledge of the lien, accepting and disposing of the Elcar house trailer and then refusing to inform officers of the plaintiff bank of the location thereof. It is also significant that the pre-trial order establishes that the McGinnises, in the trust deed describing the Elcar house trailer, "represented that they resided in Wayne County". Also, as will hereafter more fully appear, the interveners agreed to submit to the jury an interrogatory as to the existence of fraud, and should not now be heard to argue against the basis for the determination of that question by the jury.

The interveners strongly urge that since the attorney for the plaintiff did not testify, the proof is conclusive that he had notice of the existence of the conditional sales contract before the date of the levy of the attachment. But the jury was not bound to accept that view. Since the officers of the bank familiar with the transaction testified that they received no such knowledge, the jury was not bound to draw the inference that the attorney failed in his duty, as an attorney for the bank, to inform it of matters within his knowledge. Such an inference ought not be quickly or loosely

drawn, or held to apply, since an attorney who must testify in a case in which he has been employed should withdraw therefrom before testifying, though to do so would often be to the disadvantage or prejudice of his client. Moreover, the witnesses testifying as to the existence of such knowledge were vitally interested in the matter and the jury was at liberty to disbelieve them, in the circumstances detailed. The testimony of Price and Cornett, quoted above, sharply conflicts with the testimony of McGinnis on the question of such notice.

On motion of the plaintiff bank, and agreement of the interveners, the court submitted to the jury two interrogatories, as follows: "(1) Did William H. and Mary C. McGinnis or either of them assign or dispose of the Elcar Trailer to Gilbert Trailer Sales, Inc., with intention to defraud the Security Bank of Huntington? (2) Does the Security Bank of Huntington have the prior lien on the Kentuckian trailer by reason of the attachment in this Court on December 11, 1959, or does the conditional sales contract dated August 25, 1959, and recorded in Cabell County on January 4, 1960, in favor of Gilbert Trailer Sales, Inc., create the superior lien?" The jury answered Interrogatory No. 1, "Yes", and Interrogatory No. 2, "The Security Bank of Huntington".

Before the case was submitted, however, the interveners moved that an additional interrogatory be submitted to the jury, and timely objected and excepted to the action of the court in refusing to submit it to the jury. The interrogatory refused was in the following language: "Did The Security Bank of Huntington, Plaintiff, have actual notice of the terms of the conditional sales contract, dated August 25, 1959, executed by William H. McGinnis, securing the Gilbert Trailer Sales, Inc., for the unpaid purchase money of the Kentuckian house trailer prior to the issuance of the attachment of December 11, 1959?"

The interveners now contend that Interrogatory No. 2, given to the jury, required the jury to make answer to

a question involving only a legal conclusion, not a question of fact and, for that reason, constituted error, and that the giving thereof did not justify the refusal of the additional interrogatory offered and refused. Since the interveners agreed to the giving of Interrogatory No. 2, they can not now be heard to complain, though the interrogatory may not have been in proper form, or otherwise prejudicial. But assuming that the refusal thereof was reversible error, was the court bound to give the interrogatory which was offered and refused? We have concluded that the action of the trial court in that respect did not constitute reversible error.

Code, 56-6-5, provides that a court, on the trial of any issue, "may, on motion of any party, direct the jury * * * to render separate verdicts upon any one or more of the issues, or to find in writing upon particular questions of fact to be stated in writing". In a long line of decisions this Court has consistently held that the statute vests in the trial court a reviewable discretion as to the granting of interrogatories. In *Spence v. Browning Motor Freight Lines, Inc.,* 138 W. Va. 748, 77 S. E. 2d 806, we held: "5. In an action at law in which the issues are few and uncomplicated, and it is apparent that special verdicts would not assist the jury in arriving at a proper conclusion, the trial court in the discretion vested in it under Code, 56-6-5, may refuse to submit special interrogatories to the jury." See *Davis v. Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *Gilkerson v. Baltimore & Ohio Railroad Co.,* 132 W. Va. 133, 51 S. E. 2d 767; *County Court of Mingo County v. Chattaroy Coal Co.,* 105 W. Va. 321, 142 S. E. 430; *Lovett v. Lisagor,* 100 W. Va. 154, 130 S. E. 125.

In the instant case there was only one controlling issue, the superiority of the attachment lien, and that issue was governed by a single controlling question of fact, whether the plaintiff had sufficient notice of the conditional sales contract before the issuance of the attachment. Thus, the facts would seem to clearly bring the case within the principle that where the "issues are few and uncomplicated" the court may refuse to submit

any interrogatory to the jury. Moreover, the trial of the issue of the superiority of the attachment lien, pursuant to provisions of Code, 38-7-41, is very limited, being only for the purpose of permitting the jury "to inquire into such claim", that is, the superiority of the lien of the attachment over any other claimed lien. It is also significant that Interrogatory No. 2, given to the jury, whether answered one way or the other, would, in effect, answer the question attempted to be propounded by the interrogatory refused. Since the interveners agreed to the giving of Interrogatory No. 2, whether it be deemed to call for a question of law or a question of fact, the giving of that interrogatory rendered it useless to require the jury to further answer that question. We are of the view, therefore, that no prejudicial error was committed by the action of the court in refusing the interrogatory offered by the interveners.

The only other error complained of related to remarks of the trial judge, before the jury, which, insofar as seem pertinent, are: "* * * Let me add this. That if McGinnis had fradulently removed the trailer—I say if he had—to the State of Kentucky, and if the Elcar had been taken over into Kentucky, I don't see what difference notice would make of a lien, a prior lien or any existing lien that had not yet been recorded on the Kentuckian would make in this case.

"In other words, since the Elcar was already taken out of the State of West Virginia and beyond jurisdiction of this court through the fraud—if it was fraud—of McGinnis, what could the bank do to retrieve its situation in an attempt to get hold of the Elcar? And when the Elcar was traded with a lien on it to this Gilbert Trailer Sales and the Gilbert Trailer Sales took it with a lien on it that belonged to The Security Bank, wouldn't The Security Bank have the right to follow the thing that Gilbert Trailer Sales had traded to the bank?

"What difference would it make, would be my thoughts on it, whether The Security Bank did or did not know that the Gilbert Sales had—if there was a conspiracy to defeat The Security Bank out of its claim, a conspiracy that existed between McGinnis and the Gilbert Trailer Sales, I don't think it would make any difference, as far as equity and right would be concerned, whether The Security Bank knew at the time it placed this attachment on that Kentuckian trailer or whether they didn't know that the Gilbert Company had a lien."

In *Nash v. Fidelity-Phenix Fire Insurance Company,* 106 W. Va. 672, 146 S. E. 726, 63 A.L.R. 101, we held: "4. A trial judge should not indicate in any manner to the jury his views as to the weight of the evidence which determines an important fact." See *State v. Hamrick,* 112 W. Va. 157, 163 S. E. 868; *Dye v. Rathbone,* 102 W. Va. 386, 135 S. E. 274; *Neill v. Rogers Bros. Produce Co.,* 38 W. Va. 228, 18 S. E. 563.

As early as *Newlin v. Beard,* 6 W. Va. 110, this Court held: "6. A statement made by the Court in the presence of the jury, which does not prejudice the rights of the Plaintiff in the action, although improper, is not such error as would justify an Appellate Court in reversing the judgment." In *Nash v. Fidelity-Phenix Fire Insurance Company,* supra, the Court, after pointing out that action of the trial court in examining a witness constituted error, in that it may have created in the minds of the jurors a prejudicial view of the evidence, stated: "* * * If reversal depended entirely upon this assignment, we would not likely consider it sufficient, but taken in connection with the other clear errors it buttresses the conclusion that defendant has not had a fair trial. The jury may have concluded that the judge was inclined to believe that plaintiff was innocent of any intention to commit arson. The trial court should be careful not to indicate by word or action his impressions or conclusions of fact which are peculiarly within the sole province of the jury." We do not intend to intimate that the remarks

quoted are definitely prejudicial, but to point out that, though they be deemed to have been erroneous, they may not necessarily constitute such error as to require a reversal and new trial.

An examination of the cases reveals, for the most part, at least, that the basis for holding that any such remarks of a trial judge constitute error rests largely on the fact that such remarks invade the province of the jury by indicating an opinion as to the weight of the evidence, or as to credibility of a witness. See, in addition to the cases cited, *Kinney v. Town of West Union*, 79 W. Va. 463, 91 S. E. 260; *Buckhannon & Northern Railroad Co. v. Great Scott Coal & Coke Co.*, 75 W. Va. 423, 83 S. E. 1031; *Spence v. Miller*, 197 Va. 477, 90 S. E. 2d 131.

Attempting to apply the pertinent principle of law indicated to the question at hand, we notice that the remarks complained of, made in colloquy with counsel in the presence of the jury, relate to a question of law, not to the weight of the evidence or the credibility of witnesses. It is, of course, not difficult to conceive of a jury being misled or confused as to the necessity or nature of proof by discussion of a point of law in their presence, misled or influenced in such manner as to constitute reversible error, but the question here is whether there was such prejudice created as to necessitate a reversal of the judgment rendered, in the circumstances of the case being tried. As previously pointed out, the issue being tried was simple, and the jury was informed at the beginning of the trial precisely what the two interrogatories would contain, precisely the questions to be answered. After the making of the remarks complained of, the court proceeded to receive evidence as to the facts relative to the questions involved and asked and answered by such interrogatories, and did submit to the jury the exact questions as indicated at the beginning of the trial. Moreover, examination of the remarks reveals that, considered as a whole, they constituted a speculative conjecture, a question of law for counsel, not an

attempt to discredit any proof, or preclude any further development of essential or supporting facts. Viewed in this light, as we believe the remarks should be, we think that they did not constitute reversible error.

Finding no reversible error, the judgment of the Circuit Court of Cabell County complained of is affirmed.

*Affirmed.*