542 S.E.2d 899

**Karla ALEXANDER, an infant child by her next friend, Henrietta RAMSEY, her mother, Plaintiff Below, Appellant,**

v.

**Shirley WILLARD, Sylvester Willard, Frederick Willard, John Tyson and State Farm Mutual Automobile Insurance, Defendants Below, Appellees.**

No. 27686.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 20, 2000.

Decided Dec. 8, 2000.

Gloria M. Stephens, Esquire, Welch, West Virginia, Attorney for Appellant.

J. Victor Flanagan, Esquire, Duane J. Ruggier, II, Esquire, Pullin, Knopf, Fowler & Flanagan, Charleston, West Virginia, Attorneys for Willards.

R. Carter Elkins, Esquire, Campbell, Woods, Bagley & Emerson, Huntington, West Virginia, Attorney for Tyson ,and State Farm.

PER CURIAM:

This is an appeal by Karla Alexander (hereinafter "Appellant"), an infant child, by her next friend and mother, Henrietta Ramsey, from a defense verdict in the Circuit Court of McDowell County in favor of the Appellees, Shirley Willard, Sylvester Willard, and State Farm Mutual Automobile Insurance (hereinafter "Appellees"). We reverse and remand for a new trial.

## I. Facts

On August 30, 1997, Appellee Mrs. Shirley Willard was driving an automobile owned by Mr. Frederick Willard on County Route Seven in Roderfield, West Virginia. The Appellant, age eleven, was on a bicycle at the intersection of her driveway and Route 7. According to the Appellant, she observed Mrs. Willard's vehicle crossing the railroad tracks and coming toward her. She immediately attempted to back her bicycle into her driveway. Mrs. Willard's vehicle struck the Appellant,[1] throwing her from her bicycle onto the hood of Mrs. Willard's vehicle and to the side of the highway. The Appellant sustained a broken pelvis, broken left leg, and a scar on her forehead. The Appellant was transferred to the hospital by rescue squad and remained hospitalized for nine days.

The investigating officer, Deputy Lyle Noe, measured thirty-six feet of skid marks at the accident scene. The only witnesses to the accident were Mrs. Willard, the Appellant, and Mr. Michael Whistlehunt. Mr. Whistlehunt was subpoenaed but did not appear at trial, and both parties' attempts to depose him were unsuccessful. A jury trial was conducted in the lower court on July 12, 1999, and July 13, 1999. The jury returned a verdict for Mrs. Willard, finding that she had not been negligent in the operation of the vehicle.

## II. Lower Court's Interrogation of the Appellant and Threat of Contempt

On appeal, the Appellant raises allegations of extensive and overreaching interrogation by the lower court occurring during discussion of an exhibit utilized by the Appellant and her attorney to depict the accident scene. The judge exited the bench and seated himself with the jury in the jury box during that portion of the examination. After an initial

---

1. Mrs. Willard indicated in her police statement that the Appellant had darted into the highway. The deputy did not take a statement from the Appellant.

examination by the Appellant's counsel concerning the Appellant's name, age, school information, and bicycle operation history, the Appellant began to testify concerning the accident, referencing specific areas on the exhibit. When the Appellant's counsel questioned the Appellant regarding the location of a store along her normal bicycle route, "Kwik Serv," the court intervened:

THE COURT: Well, let's try to be a little more specific. When we talk about this bike riding and so forth, are we talking about the time frame of what would amount to the summer of 1997, immediately prior to the accident and two or three months before that? Is that correct, Mrs. Stephens?

Appellant's counsel, Mrs. Stephens, replied, "Yes, Your Honor." The court continued: "So, Ms. Alexander, we're talking about the summer of 1997 before your August 30th bike accident occurred, so that's the time frame we're using."

The Appellant's counsel then conducted the examination regarding the location of the accident scene in relation to the Kwik Serv store and Jimmy's Supermarket. Apparently suspecting confusion regarding the physical layout of the area, the court intervened and asked the jury to retire to the jury room. The court, the Appellant, and Appellant's counsel thereafter engaged in a discussion regarding the location of Route 7, the Kwik Serv, and the grocery store. The Appellant's counsel offered to stipulate to the location of the Kwik Serv, and the court replied: "I don't think there's any question whatsoever. The Kwik Serv has been in the same spot for years. That's not a mystery." The Appellant's counsel then explained that she had inadvertently phrased a question in a manner the Appellant failed to understand.

The Appellant's counsel requested permission to speak with her client regarding the confusion over the physical layout of the area surrounding the accident location. The court replied, "Well, let's just—I'm going to bring the jury out and we're going to go ahead. We're in the second day of this trial." Upon the return of the jury, the Appellant's counsel attempted to conduct examination of her client. The Appellant's counsel referred the Appellant to two photographs of the area, Exhibit 3 depicting Schoolhouse Road and

Exhibit 1 depicting a portion of the street "right outside of Old Schoolhouse Road." The court interrupted:

THE COURT: Again, Ms. Stephens, let's use one at a time. She has Defendants' Exhibit No. 1 in her hand. Let's use that, refer to it, whatever, and go from there.

MS. STEPHENS: Your Honor, I'd like for her to describe using the exhibits how the accident happened.

THE COURT: Well, are you wanting her to describe how the accident occurred and also point out certain things on the photograph—

MS. STEPHENS: Yes, Your Honor.

THE COURT:—with regard to identifying locations as to where it happened?

MS. STEPHENS: Yes, Your Honor.

THE COURT: Certainly—is there objection to that, Counsel?

MS. BANDI: No, Your Honor.

As the Appellant thereafter began to explain her route through her own yard, the court interrupted again:

THE COURT: Just one second. Okay, Ms. Alexander—Ms. Stephens—

MS. STEPHENS: Did—

THE COURT: *Mrs. Stephens, pay a little bit of attention to the Court, please. Let's put that exhibit back in hand. Put the other exhibit down. Hold that exhibit, that's Defendants' Exhibit No. 1, up, please, for us.* (emphasis added).

Now, Ms. Alexander, you were describing the accident. Okay, let's start again. Show us your home where you lived back then.

(Witness complies)

THE COURT: Okay, the Old Schoolhouse Road?

(Witness complies)

THE COURT: That's the dirt road. Right?

THE WITNESS: Yes.

THE COURT: Now, that's the road you just described to us you came down on your bicycle that day. Is that right?

THE WITNESS: Yes.

THE COURT: Now, show us where the public road is, the main highway, County Route 7, if it's on that photograph?

(witness complies)

THE COURT: So that's the paved portion at the bottom. Is that correct?

THE WITNESS: Yes.

THE COURT: Now, show us the direction back then you would be going if you were going in what we have referred to as the Kwik Serv at Roderfield?

(witness complies)

THE COURT: That would be going to your right facing the photograph. Right?

THE WITNESS: Yes.

THE COURT: What would be going back the other way to the left if you go down the road?

THE WITNESS: Big Sandy.

THE COURT: All right. Fall River Elementary School?

THE WITNESS: Yes.

THE COURT: Now, you described you came down to the foot of the Old Schoolhouse Road at that time. Is that right?

THE WITNESS: Yes.

THE COURT: About what time of day was it?

THE WITNESS: Around 11:30—12:00.

THE COURT: Noon?

THE WITNESS: Morning.

THE COURT: Near noon?

THE WITNESS: Yes.

THE COURT: Were you alone on the bicycle?

THE WITNESS: Yes.

THE COURT: Was anyone with you at all?

THE WITNESS: No, sir.

THE COURT: Where were you going?

THE WITNESS: To the Kwik Serv.

THE COURT: Now, you indicated you saw Mrs. Willard's truck on the main road. Is that correct?

THE WITNESS: Yes.

THE COURT: As best you can point out on that photograph, Defendants' Exhibit No. 1, show us where you were when you saw the truck and the approximate area where you were and the approximate—

MS. STEPHENS: (Picks up an exhibit)

THE COURT: No. Mrs. Stephens—

MS. STEPHENS: I'm sorry. I thought you said No. 1.

THE COURT: I thought that's what she had in her hand.

MS. STEPHENS: No, that's—it's No. 3.

THE COURT: Okay, we're back to Defendants' Exhibit 3. I'm lost now.

MS. STEPHENS: This is—

THE COURT: Anyway, let's not be switching photographs.

MS. STEPHENS: I'm sorry. I thought you wanted—you said No. 1.

THE COURT: *Unless we want to be held in contempt of court.* (emphasis added).

MS. STEPHENS: No, Your Honor.

The lower court thereafter continued questioning the Appellant regarding the accident scene before permitting the Appellant's counsel to proceed with her own examination of the Appellant.

The Appellant asserts that the lower court assumed an inappropriately dominate role in the direct examination of the Appellant, interrupting the presentation of the Appellant's evidence and prejudicing the Appellant's case. The Appellant further contends that the court's questioning interfered with her attorney's presentation of evidence and prevented her attorney from pursuing her theory of the case. The Appellant also contends that the unjustified threat of contempt made in the presence of the jury unreasonably compromised the neutrality of the jurors by generating a bias against the position espoused by the Appellant and casting suspicion upon the credibility of counsel for the Appellant. It is important to note that during his entire period of questioning, the trial judge was seated in the jury box.

The Appellees maintain that the questioning was proper under Rule 614 of the West Virginia Rules of Evidence[2] and that the

2. Rule 614 provides guidance on the calling and interrogation of witnesses by the court, as follows:

(a) *Calling by court*—The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

(b) *Interrogation by court*—The court may interrogate witnesses, whether called by itself or by a party, but in jury trials the court's interrogation shall be impartial so as not to prejudice the parties.

(c) *Objections*—Objections to the calling of witnesses by the court or to interrogation by it

threat of contempt against the Appellant's counsel was not inappropriate or prejudicial. The Appellees also contend that the Appellant waived her right to appeal these issues by failing to object to the judge's actions during trial.

■■■ In syllabus point three of *State v. Farmer*, 200 W.Va. 507, 490 S.E.2d 326 (1997), we explained that "[t]he plain language of Rule 614(b) of the West Virginia Rules of Evidence authorizes trial courts to question witnesses—provided that such questioning is done in an impartial manner so as to not prejudice the parties." We examined the proper role and demeanor of the trial judge during a jury trial in *McDonald v. Beneficial Standard Life Ins. Co.*, 160 W.Va. 396, 235 S.E.2d 367 (1977), and explained as follows:

> The paramount function of the trial judge is to conduct trials fairly and to maintain an atmosphere of impartiality. That is why both common sense and our law demand that trial judges refrain from making prejudicial remarks in the presence of the jury. *Stenger v. Hope Natural Gas Co.*, 141 W.Va. 347, 90 S.E.2d 261 (1956). It is improper for a judge to express verbally or by conduct an opinion on questions of fact, or to indicate in any manner to the jury his personal views on the credibility of the witness or the weight of the evidence.

160 W.Va. at 398, 235 S.E.2d at 368. In syllabus point one of *Dye v. Rathbone*, 102 W.Va. 386, 135 S.E. 274 (1926), this Court explained:

> The judge of the court when engaged in the trial of a case before a jury should studiously abstain from indicating by word, gesture or otherwise his personal views upon the weight of the evidence, or the credibility or incredibility of the witnesses, or the extent of the damages sued for, thereby to invade the province of the jurors, the proper triers of the facts.

■■■ Thus, in defining the role of a judge in interrogating a witness, Rule 614 permits the judge to ask questions to prevent misunderstanding, but extended examination of any witness has not been favored. *Nash v. Fidelity–Phenix Fire Ins. Co.*, 106 W.Va.

672, 146 S.E. 726 (1929). In *Nash*, an allegation of error was based upon the trial *judge's* interrogation of the plaintiff with regard to repudiation of his confession to burning his automobile. *Id.* at 674, 146 S.E. at 726. This Court stated that "[a] judge may ask questions for the purpose of clearing up points that seem obscure, and supplying omissions which the interest of justice demands, but it is not proper that he conduct an extended examination of any witness." *Id.* at 679, 146 S.E.2d at 728.

In *Sharpton v. State*, 1 Ga.App. 542, 57 S.E. 929 (1907), the court commented:

> It is almost an intellectual impossibility for a judge to engage in an examination of a witness on vital questions of the case on trial without in some manner and to some extent indicating his own opinion. Every practitioner knows how eagerly alert jurors are to every utterance from the bench, and how sensitive is the mind of the juror to the slightest judicial expression.

*Id.* at 932; *see also Rivas v. Brattesani*, 94 F.3d 802, 807 (2d Cir.1996) (discussing whether judge "conveyed to the jury the impression that it held a fixed and unfavorable opinion of defendant[ ], [his] counsel, and [his] position"); *Santa Maria v. Metro–North Commuter R.R.*, 81 F.3d 265, 273 (2d Cir.1996) (basing inquiry upon whether judge's conduct "went beyond judicial skepticism"); *United States v. Tilton*, 714 F.2d 642, 644 (6th Cir.1983) (explaining that "potential prejudice lurks behind every intrusion into a trial made by a presiding judge").

In *United States v. Filani*, 74 F.3d 378 (2d Cir.1996), the United States Court of Appeals for the Second Circuit found that reversal of a drug-related conviction was required where the trial judge "t[ook] over the role of the prosecutor and display[ed] bias[.]" *Id.* at 385. The court reasoned that a trial court may ask questions for such purposes as " 'clarifying ambiguities, correcting misstatements, or obtaining information needed to make rulings.' " *Id.* at 386 (quoting *United States v. Pisani*, 773 F.2d 397, 403 (2d Cir.1985)). In *Filani*, however, the trial court proceeded beyond the acceptable role of the trial court and intensely cross-examined the defendant,

may be made at the time or at the next avail- able opportunity when the jury is not present.

questioned his story, and demonstrated his disbelief in the defendant's testimony. 74 F.3d at 385–86. The court emphasized that although it did "not have the benefit of seeing the facial expressions of the questioner or the tone used, the trial judge's questions nonetheless betray a tone of incredulity." *Id.* at 381.

Analyzing the traditional province of the judge in a jury trial, the court observed that "experienced trial judges have championed the view that our adversarial system gives little room for trial judges' questioning of witnesses" and that intrusions into questioning of witnesses may offer more "confusion than guidance to the jury because the trial judge looks down at the case from the peak of the mountain of ignorance[.]" *Id.* at 384, (citing, in part, Marvin E. Fankel, *The Search for Truth: An Umpireal View,* 123 U.Pa.L.Rev. 1031, 1042 (1975)) ("His intrusions will in too many cases result from partial or skewed insights.... He runs a good chance of pursuing inspirations that better informed counsel have considered, explored, and abandoned after fuller study"). The *Filani* court concluded that despite the failure of defense counsel to object, the judge's conduct constituted plain error under Rule 52(b) of the Federal Rules of Criminal Procedure[3] and reversal was required. 74 F.3d at 387.

■■■ With regard to the trial court's action in the case sub judice of threatening Appellant's counsel with contempt, the Appellees contend that the judge's action constituted a proper and necessary control of the presentation of evidence, consistent with Rule 611(a) of the West Virginia Rules of

Evidence.[4] We have explained as follows in *State v. Cokeley,* 159 W.Va. 664, 226 S.E.2d 40 (1976):

Authorities indicate that where the court directs critical remarks at counsel that such conduct should be viewed in the context of the entire trial. A trial court may admonish or rebuke counsel during the trial if counsel's action requires it. However, it is improper and prejudicial for the trial court to threaten counsel with contempt for attempting to offer or elicit evidence which the court deems inadmissible but which is offered in good faith, particularly where, in a criminal case, the evidence of guilt is conflicting. 75 Am.Jur.2d *Trial* §§ 116, 118 & 119 (1974). Some courts have held it to be reversible error, per se, for a trial court to make unjustified threats of contempt proceedings against counsel in the presence of the jury. *See, e.g., Sprinkle v. Davis,* 111 F.2d 925 (4th Cir.1940); *Atlantic Refining Co. v. Jones,* 70 F.2d 89 (4th Cir.1934).

159 W.Va. at 671, 226 S.E.2d at 44.[5]

■■■ Where an allegation is forwarded that trial court conduct prejudiced the rights of a party to presentation of its evidence and jeopardized the impartiality of the jury, a reviewing court is obligated to evaluate " 'the entire record and attempt to determine whether the conduct of the trial has been such that the jurors have been impressed with the trial judge's partiality to one side to the point that this became a factor in the determination of the jury.' " *United States v. Valenti,* 60 F.3d 941, 946 (2d Cir.1995) (quoting *United States v. Guglielmini,* 384

3. Rule 52(b) of the Federal Rules of Criminal Procedure provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

4. Appellee Mrs. Willard states that the court's action was proper as a control of the presentation of evidence. Rule 611(a) requires the trial judge to control the presentation of evidence.

 (a) *Control by court*—The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless

consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

5. As recognized in *United States v. Olgin,* 745 F.2d 263 (3d Cir.1984), *cert. denied sub nom., O'Brocta v. United States,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985), a trial judge's comment can be "counterbalanced by a curative instruction." 745 F.2d at 269. No such instruction was given in the present case. Curative instructions can be effective in altering the prejudicial effect of comments from the bench where a judge "clearly explain[s] to the jury that it is free to disregard his remarks and must determine the facts and decide the case on its own." *Id.*

F.2d 602, 605 (2d Cir.1967), *cert. denied*, 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970)).

 Having examined the entire record regarding the circumstances surrounding the trial court's extensive interrogation of the Appellant and the threat of contempt against the Appellant's counsel, we find that the trial court's interruption of the Appellant's presentation of her case for such an extended period was unwarranted and prejudicial to the presentation of the Appellant's case. We further find that the threat of contempt was unjustified, that it was prejudicial to the Appellant's presentation of her case, and that it presented to the jury the opportunity to infer that the Appellant's counsel was engaged in some nefarious activity and was not worthy of their trust and confidence. The magnitude of this error was enhanced by the presence of the trial judge in the area of the room reserved for the jury alone.

 Although counsel for the Appellant failed to raise a contemporaneous objection to the questioning and the threat of contempt, we find the actions of the trial court in this case to be of such magnitude as to justify reversal upon a plain error analysis. In syllabus point seven of *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), this Court explained the utilization of the plain error doctrine, as follows:

> An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syllabus point seven of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), provides: "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."

### III. *Batson* Challenge and Proffered Habit Evidence

 We reverse and remand based upon the interrogation by the lower court and the unjustified threat of contempt against Appellant's counsel; consequently, we only briefly address the Appellant's other assignments of error and find them meritless. The Appellant contends that the lower court erred by denying the Appellant's challenge to the defense's preemptory strike of the only black juror, Mrs. Elizabeth Craighead. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court enumerated standards for the inquiry to be conducted where a peremptory strike of a black juror is made and racial concerns are raised. In addressing the requirements of *Batson*, this Court has explained that a trial court is obligated to determine whether the explanation offered for the strike is credible or pretextual for racial discrimination. *Parham v. Horace Mann Ins. Co.*, 200 W.Va. 609, 490 S.E.2d 696 (1997); *State v. Rahman*, 199 W.Va. 144, 483 S.E.2d 273 (1996).

The lower court in the case sub judice thoroughly examined the *Batson* challenge and engaged in an appropriate analysis of the claims. We find that the lower court properly concluded that the defense had forwarded legitimate reasons for the strike based upon: (1) Mrs. Craighead's prior appearance before the Appellant's attorney in that attorney's capacity as a Family Law Master; (2) Mrs. Craighead's indication of potential involvement in a personal injury lawsuit, with the Appellant's attorney's husband serving as circuit court judge; (3) Mrs. Willard's recognition of Mrs. Craighead in Mrs. Willard's employment.

Specifically, the lower court found:

[T]he Court finds that the reason for striking No. 2, Ms. Craighead, was for an earnest good faith reason which amounted to a racially neutral reason, meaning that Ms. Craighead was not struck or removed from the panel because that she was black but for other reasons, the pending lawsuit or the fact that her vehicle, she was involved as a party to a lawsuit, and defense counsel has indicated that that's a standard prac-

tice of this particular defense counsel, to strike people who are involved in such suits. Plaintiff has not presented to the Court anything satisfactory to indicate that this reason was falsely stated or was a misrepresentation to the Court or anything of that sort. Therefore, the Court will deny the defendants'—pardon me, the Court will uphold the defendants' right to strike Panel Member No. 2, Ms. Craighead, Elizabeth Craighead, as one of its two preemptory strikes and will deny the plaintiffs' objection thereto, and basically what amounts to plaintiffs' motion under *Batson*....

Discerning no impropriety in the lower court's ruling on that issue, we affirm the lower court's *Batson* ruling.

■■■■ Similarly, we affirm the lower court's determination that certain evidence offered by the Appellant for the purpose of establishing the safe bicycle operating habits of the Appellant was inadmissible. Ms. Shawna Padgett, the Appellant's sister, would have testified that she taught the Appellant how to ride a bicycle, that the Appellant was experienced in riding on the road and obeying traffic safety rules, that the Appellant was aware of her responsibilities as a bicyclist on the roadways, and that she was very familiar with the area in which the accident occurred. The trial's judge's determination that the offered evidence did not constitute habit evidence under Rule 406 of the West Virginia Rules of Evidence was not in error.[6] We have consistently held that in order to qualify as "habit evidence," the testimony must establish a regularly repeated response of a person such that the response is semi-automatic. *Rodgers v. Rodgers,* 184 W.Va. 82, 399 S.E.2d 664 (1990). Syllabus point fourteen of *Rodgers* explains:

> Under Rule 406 of the West Virginia Rules of Evidence, evidence of a person's habit must be shown to be a regularly repeated response to similar factual situations. The trustworthiness of habit evidence lies in its regularity, such that the

act or response is shown to be almost semiautomatic.

184 W.Va. at 86, 399 S.E.2d at 668, Syl. Pt. 14.

■■■■ The United States Court of Appeals for the Fourth Circuit has provided the following guidance on the introduction of habit evidence:

> It is only when the examples offered to establish such pattern of conduct or habit are "numerous enough to base an inference of systematic conduct" and to establish "one's regular response to a repeated specific situation" or, to use the language of a leading text, where they are "sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any of prejudice and confusion," that they are admissible to establish a pattern or habit. In determining whether the examples are "numerous enough" and "sufficiently regular," the key criteria are "adequacy of sampling and uniformity of response...."

*Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 511 (4th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978) (footnotes and citations omitted).

We find that the lower court properly excluded the offered habit evidence based upon the fact that the proffered evidence did not tend to establish a repeated pattern of conduct rising to the level of systematic conduct. There is no evidence suggesting that the proffered witness had ever observed the Appellant in a situation similar to that which existed immediately prior to the accident. General testimony concerning the Appellant's level of skill in bicycle operation would not constitute habit evidence demonstrating "a regularly repeated response to similar factual situations[,]" as required by *Rodgers.* 184 W.Va. at 86, 399 S.E.2d at 668, Syl. Pt. 14, in part. We therefore affirm the lower court's ruling on that issue.

---

**6.** Rule 406 of the West Virginia Rules of Evidence provides as follows:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the pres-

ence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

### IV. Conclusion

Based upon the foregoing discussion of the lower court's extended and prejudicial interrogation of the witness and the unjustified threat of contempt, we reverse and remand for a new trial.

Reversed and Remanded.