614 S.E.2d 464

Robert Julian WARE, Betty Jean Work-
man, Almonta Creak and Roger Ware,
Petitioners Below, Appellants,

v.

Almira Jane HOWELL, Executrix of the
Estate of Biddie L. Ware, Respondent
Below, Appellee.

No. 31973.

Supreme Court of Appeals of
West Virginia.

Submitted March 23, 2005.

Filed May 10, 2005.

Bridgette R. Wilson, Busch, Zurbuch & Thompson, P.L.L.C., Elkins, for Appellants.

David H. Wilmoth, Elkins, for Appellee.

PER CURIAM.

Before this Court, Robert Julian Ware, Betty Jean Workman, Almonta Creak and Roger Ware, appellants/petitioners below (hereinafter referred to as the "Appellants") appeal from an order of the Circuit Court of Randolph County granting a new trial to Almira Jane Howell, executrix of the estate of Biddie L. Ware, appellee/respondent below (hereinafter referred to as "Ms. Howell"). The Appellants contend that the circuit court committed error in setting aside the jury's verdict and granting Ms. Howell a new trial. After a careful review of the briefs and record, and listening to the arguments of the parties, we reverse.

I.

### FACTUAL AND PROCEDURAL HISTORY

Two wills were created by the decedent Biddie L. Ware (hereinafter referred to as "Ms. Ware"). Ms. Ware executed a will in 1990 wherein she left her entire estate to her daughter, Viola Ware (hereinafter referred to as "Viola"). However, the will contained a provision that conveyed the bulk of Ms. Ware's estate equally to her other children, should Viola die within sixty days of Ms. Ware's death. In June of 1997, Ms. Ware, who was 100 years old at the time, executed a second will in which she disinherited Viola. The second will left the bulk of Ms. Ware's estate to another daughter, Ms. Howell,[1] who was also named the executrix of the will.[2]

---

1. At some point in 1991 Ms. Ware and Viola moved into Ms. Howell's home.

2. Except for Viola, the second will left one dollar to Ms. Ware's other children.

On September 26, 1998, Ms. Ware died.[3] In 1999, Ms. Howell filed Ms. Ware's second will for probate before the County Commission of Randolph County. The Appellants filed a Notice of Contest to the will, asserting that the will was invalid because it was procured by undue influence.[4] Based upon an agreed order by the parties, the County Commission entered an order on June 13, 2000, removing the case to circuit court.

After the case was removed to circuit court, the parties engaged in a period of discovery. The case was scheduled for a jury trial on November 5, 2001. About a week before the trial began, the parties learned that Rhonda Lawson, one of the two people who signed as witnesses to Ms. Ware's 1997 will, could not attend the trial.[5] As a result of Ms. Lawson's inability to attend the trial, the parties took her deposition on November 3, 2001. During Ms. Lawson's deposition, she stated that she witnessed Ms. Ware's will, but that she did not sign it in the presence of Ms. Ware.[6]

As a result of Ms. Lawson's deposition testimony, the Appellants filed a motion on November 5, the day of trial, to amend their Notice of Contest to the will. In that motion, the Appellants asked the court to permit them to allege that the will was invalid because it was not executed according to law. Ms. Howell did not object to the motion, and therefore the trial court granted the motion.[7]

During their case-in-chief, the Appellants called Ms. Howell, Ms. Wilmoth and Ms. Harman as witnesses. The Appellants also had Ms. Lawson's deposition testimony read to the jury.[8] Ms. Howell was the only witness to testify on her behalf during her case-in-chief. When the jury retired they were given a verdict form which asked them to decide whether the will was executed in accordance with the law, or whether the will was procured by undue influence. The jury returned a verdict in favor of the Appellants, concluding that the will was not executed in conformity with the law.

On November 16, 2001, prior to entry of a judgment order on the jury's verdict, Ms. Howell filed a motion to amend or alter the judgment, or in the alternative, a new trial. It was not until January 12, 2004, that the trial court entered an order granting Ms. Howell a new trial. This appeal followed.

## II.

### STANDARD OF REVIEW

In this proceeding, we are called upon to determine whether the trial court's ruling granting Ms. Howell a new trial pursuant to Rule 59 of the West Virginia Rules of Civil procedure was proper. In *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va.

---

3. Viola died in September of 1997.

4. Three of the persons filing the Notice of Contest, Robert Julian Ware, Betty Jean Workman and Almonta Creak, are children of Ms. Ware. During oral argument, counsel stated that Roger Ware was the son of Ms. Ware's deceased son.

5. Ms. Lawson was listed as a witness by both parties. She was residing in Virginia at the time of trial.

6. The circumstances surrounding execution of the 1997 will were as follows. Ms. Howell drove Ms. Ware to the law office of Mike Mullen. Ms. Ware never got out of the car and never actually met with Mr. Mullen. Ms. Howell testified that she conveyed all information about the new will to Cassandra Wilmoth, a legal assistant in Mr. Mullen's office. Ms. Howell further testified that she never met with Mr. Mullen. However, Ms. Wilmoth testified that Ms. Howell spoke with Mr. Mullen and that the will was drafted based upon notes made by Mr. Mullen. There was general agreement that after the will was drafted it was taken to Ms. Ware, who was sitting in the car. Ms. Wilmoth presented the will to Ms. Ware and gave her a general description of what was contained in it. The two witnesses to the will, Ms. Lawson and Sandra Harman, testified that they saw Ms. Ware sign the will. Ms. Harman also testified that she believed she placed her signature on the will while she was in the presence of Ms. Ware. Ms. Lawson, on the other hand, testified that she signed the will after returning to the law office and out of the presence of Ms. Ware. Ms. Wilmoth signed the will as a notary public.

7. The record does not contain an order actually granting the motion to amend. However, the jury was instructed on the issue.

8. In the post-trial motion and response filed by the parties, they indicate that David Hart, the attorney who prepared Ms. Ware's 1990 will, testified on behalf of the Appellants. However, the trial transcript does not include any testimony or reference to Mr. Hart.

28

97, 104, 459 S.E.2d 374, 381 (1995), we explained:

> We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

We have also held that:

> When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

Syl. pt. 3, in part, *In re State Public Bldg. Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994). Additionally, we have long held that "[i]t takes a stronger case in an appellate court to reverse a judgment awarding a new trial than one denying it and giving judgment against the party claiming to have been aggrieved." Syl. pt. 1, *The Star Piano Co. v. Brockmeyer,* 78 W.Va. 780, 90 S.E. 338 (1916). *See* Syl. pt. 1, *In re State Public Bldg. Asbestos Litig.,* 193 W.Va. 119, 454 S.E.2d 413 (1994). That is, "[a]n appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new trial than when such action results in a final judgment denying a new trial." · Syl. pt. 4, *Young v. Duffield,* 152 W.Va. 283, 162 S.E.2d 285 (1968),

overruled on other grounds by *Tennant v. Marion Health Care Found. Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995). Even so, we have made clear that "[a]lthough the ruling of a trial court in granting ... a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976).

## III.

## DISCUSSION

The dispositive issue in this case is whether the circuit court abused its discretion in granting Ms. Howell a new trial. The circuit court's order set out essentially two grounds for granting the new trial: (1) it was concerned about the credibility of Ms. Lawson and (2) the opportunity to investigate and inquire into Ms. Lawson's credibility.[9] We will examine both grounds separately.

### A. Ms. Lawson's Credibility

The circuit court's order indicated that it was granting Ms. Howell a new trial, in part, because the court had doubts about Ms. Lawson's credibility.[10] This Court has held that in reviewing a Rule 59 motion for new trial a circuit court has "authority to ... consider the credibility of the witnesses." *Asbestos Litigation,* 193 W.Va. at 126, 454 S.E.2d at 420. Ordinarily, this Court will defer to credibility determinations made by a trial court because "[a] reviewing court cannot assess witness credibility through a record." *Michael D.C. v. Wanda L.C.,* 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). However, this deference evaporates when a credibility determination is made from testimony presented in a deposition. This is because in reviewing evidence presented through deposition testimony, "all impres-

9. We should point out that the reasons given by the circuit court for granting a new trial were not argued by Ms. Howell below. Ms. Howell sought a new trial on the grounds that the verdict was against the weight of the evidence, and on the grounds that the Appellants should not have been permitted to amend the Notice of Contest to the will.

10. "Credibility is the worthiness of belief that should be given the witness's testimony." Franklin D. Cleckley, Vol. 1, *Handbook on Evidence for West Virginia Lawyers,* § 6–11(F)(2)(b) (4th ed.2000). Additionally, "[t]he term 'credibility' includes the interest and bias of the witness, inconsistent statements made by the witness, and to a certain extent the witness's character." *Id.,* at § 6–7(B).

sions of ... credibility are drawn from the contents of the evidence, and not from the appearance of witnesses and oral testimony at trial." *Wells v. Tennessee Board of Regents*, 9 S.W.3d 779, 783–84 (Tenn.1999). That is, when evidence "is presented by deposition, the reviewing court may draw its own conclusions about the ... credibility of the ... testimony since it is in the same position as the trial judge for evaluating such evidence." [11] *Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 732 (Tenn.2002).[12] Consequently, when deposition testimony is presented as evidence during a trial, in lieu of live testimony by the deponent, this Court may draw its own conclusions about the credibility of the deponent's testimony and need not defer to the trial court's credibility ruling.

As previously noted, Ms. Lawson moved out of the state and was unable to attend the trial. Consequently, her deposition was taken via telephone [13] and introduced during the trial.[14] During redirect examination of Ms. Lawson at her deposition, by counsel for the Appellants, the following exchange occurred:

Q. Where did you sign the Will—when you took the Will to sign your name where did you do that?

A. Inside the office.

Q. So you did not sign it out in the parking lot?

A. No.

Q. So you did not sign the Will in front of Biddie Ware?

A. It was inside.

Q. And Biddie Ware never came inside and saw you sign the will?

A. No.

. . . .

11. Obviously deference would be accorded if deposition testimony is presented at trial via a videotaped deposition and the videotaped deposition is not made part of the record on appeal. See *Attorney Grievance Com'n of Maryland v. Gallagher*, 371 Md. 673, 810 A.2d 996, 1010 (2002) ("The hearing judge also viewed the videotaped deposition of Mr. Lobo and was able to assess his answers, demeanor and credibility in answering both the petitioner's and respondent's questions.").

12. *Luckenbach S.S. Co. v. United States*, 157 F.2d 250, 251 (2nd Cir.1946) ("All the evidence was by deposition. Hence this court is as well able as the trial judge to appraise the credibility of the witnesses and draw inferences from their testimony."); *Spry v. Boles*, 299 F.2d 332, 334 (4th Cir.1962) ("Since the Court had only written depositions before it, we are as capable to determine questions of credibility and weight of the evidence as was the District Court."); *Stuppy v. United States*, 560 F.2d 373, 376 n. 6 (8th Cir. 1977) ("This court is not bound by the district court's credibility evaluation of witnesses where the evidence is submitted by deposition or in other documentary form."); *Furness, Withy & Co. v. Carter*, 281 F.2d 264, 266 (9th Cir.1960) ("Defendant's case rested primarily upon the deposition of one Weeks, whose credibility we can judge as well as could the lower court."); *Neff v. United States*, 420 F.2d 115, 117 (D.C.Cir.1969) ("[M]uch of the evidence adduced at trial consisted of depositions; thus, the trial judge's advantage of being able to assess demeanor and credibility is less compelling than usual."); *But see United States v. Davis*, 261 F.3d 1, 39 n. 34 (1st Cir.2001) ("[T]he [trial] court's credibility findings regarding deposition testimony are still entitled to deference on appeal."); *See* Syl. Pt. 2,

*Stith v. Williams*, 227 Kan. 32, 605 P.2d 86 (1980) ("Where the controlling facts are based upon ... documentary evidence by way of ... depositions ..., the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below[.]"); *Allen v. Louisiana–Pacific Corp.*, 512 So.2d 556, 558 (La.App.1987) ("[In] testimony [given] in the form of deposition[] ... the trial judge did not observe the demeanor of the witness and, therefore, is in no better position to assess credibility than the appellate court."); *Herring–Curtiss Co. v. Curtiss*, 223 A.D. 101, 227 N.Y.S. 489, 495–96 (1928) ("The credibility of this witness is attacked in respondent's brief. Since his testimony was taken by deposition and read in evidence, we can deal with the question of credibility on a [parity] with the learned trial judge, and, in any event, to do so is both our right and our duty.").

13. "[U]nder Rule 30(b)(8) the parties may stipulate in writing or upon motion, the court may order that a deposition be taken by telephone or other remote electronic means." Franklin D. Cleckley, et al., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 30(b)(8) (2000).

14. "Under Rule 32(a)(3)(B) the deposition of a witness may be used by any party for any purpose, if the witness is out of the state, unless it is shown that the absence of the witness was procured by the party offering the deposition." Cleckley, et al., *Litigation Handbook*, § 32(a)(3)(B).

Q. Have you ever taken the opportunity when you executed a Will to read the paragraph that you're basically attesting to in the Will?

A. I have never read a Will except mine.

Q. And where you signed your name there is a paragraph and I won't read the whole paragraph but its says—and I'll just tell you portions of it -

That the Will was signed and acknowledged by the Testatrix as .for her Last Will and Testament in the presence of both of them that they subscribed their names to the Will as attesting witnesses in the presence of the Testatrix and in the presence of each other.

So I think what you're telling me now is you did not sign your name i[n] the presence of the Testatrix which was Biddie Ware?

A. No. I didn't.

. . . .

Appellants' Counsel: I have no other questions.

Ms. Howell's Counsel: I don't have any other questions.

■ Ms. Lawson's testimony indicated that she did not sign the will in the presence of Ms. Ware, although the attestation clause of the will indicated differently.[15] Thus, the factual issue for the jury to determine was whether Ms. Lawson was telling the truth when she stated in her deposition that she did not sign the will in the presence of Ms. Ware, even though the attestation clause of

the will indicated that she did sign the will in the presence of Ms. Ware. The jury resolved this factual issue by finding that Ms. Lawson was telling the truth in her deposition testimony.[16] The circuit court disagreed with the jury because it doubted the credibility of Ms. Lawson's deposition testimony on this issue. However, in our review of Ms. Lawson's deposition we do not find any credibility conflict that would warrant substituting the circuit court's opinion for that of the jury. Ms. Lawson explained the inconsistency between her deposition testimony and the attestation clause by stating that she did not read the attestation clause-she simply signed her name to the will. Insofar as "[t]he testimony of [Ms. Lawson] not being inherently incredible, the jury had the right to believe her, and we think it [was] improper for th[e][c]ourt to substitute its opinion for that of the jury[.]" *State v. Beacraft*, 126 W.Va. 895, 900, 30 S.E.2d 541, 544 (1944), *overruled on other grounds by State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). *See Toler v. Hager*, 205 W.Va. 468, 475, 519 S.E.2d 166, 173 (1999) ("The judge cannot substitute his opinion for that of the jury merely because he disagrees."); *Laney v. State Farm Mut. Auto. Ins. Co.*, 198 W.Va. 241, 249, 479 S.E.2d 902, 910 (1996) (per curiam) ("[A] jury verdict is accorded great deference, especially when it involves the weighing of conflicting evidence."). Moreover, "[w]hile it may be that the appellate court may judge the credibility of a witness testifying by deposition as well as the jury, the question of the proper inference to be drawn from circumstances

---

**15.** The requirements for executing a valid will are set out in W. Va.Code § 41–1–3 as follows:

No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and *such witnesses shall subscribe the will in the presence of the testator*, and of each other, but no form of attestation shall be necessary.

(Emphasis added).

**16.** This Court held in Syllabus point 2 of *Wade v. Wade*, 119 W.Va. 596, 195 S.E. 339 (1938), in part, that "[w]hether witnesses to a will have

subscribed the same in the presence of the testator and of each other, as required by statute, is a question of fact[.]" Further, the decisions of this Court have firmly held that "[i]t is the peculiar and exclusive province of the jury to ... resolve questions of fact when the testimony of witnesses regarding them is conflicting[.]" Syl. pt. 2, in part, *Graham v. Crist*, 146 W.Va. 156, 118 S.E.2d 640 (1961). *See Harrison v. Town of Eleanor*, 191 W.Va. 611, 616, 447 S.E.2d 546, 551 (1994) ("[I]t is well-established that determinations involving questions of ... fact are within the province of the jury."); Syl. pt. 3, *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975) ("It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting.").

which support more than one fact conclusion is for the jury alone[.]" *Independence Indem. Co. v. Kell,* 58 S.W.2d 1032 (Tex.Civ. App.1933) (citation omitted). Consequently, the trial court committed error in granting a new trial on the grounds that Ms. Lawson's testimony lacked credibility.

## B. Opportunity to Investigate and Inquire into Ms. Lawson's Credibility

In addition to having doubts about Ms. Lawson's credibility, the circuit court's order also expressed concern about the opportunity to investigate and inquire into her credibility. Based upon our review of the record in this case, we find this issue was also not a basis for granting a new trial.

It has been correctly observed that "when depositions are submitted in place of live testimony, the trial judge is denied the opportunity to question the witness." Franklin D. Cleckley, et al., Litigation Handbook on West Virginia Rules of Civil Procedure, § 32 (2000).[17] For this and other reasons, it is incumbent upon the parties to thoroughly question a deponent when it is known that the deposition will be used in lieu of live testimony. Failure to do so, when not caused by an impediment by the adversary or deponent, is a tactical decision with which a party must live. Indeed, it has been correctly noted that "as a general rule, a party's decision to limit cross-examination in a ... deposition is a strategic choice and does not

preclude his adversary's use of the deposition at a subsequent proceeding." *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1506 (11th Cir.1985). *See Henkel v. XIM Products, Inc.,* 133 F.R.D. 556, 557 (D.Minn. 1991) ("A party who makes the tactical decision during a deposition to refrain from examining a witness who is beyond the subpoena power of the court, takes the risk that the testimony could be admitted at trial if the witness will not or cannot appear voluntarily.").

During Ms. Lawson's deposition, both parties had an opportunity to question her. Counsel for the Appellants initiated direct examination of Ms. Lawson. When the direct examination ended, counsel for Ms. Howell conducted cross examination of Ms. Lawson. Thereafter, counsel for the Appellants conducted redirect examination. It was during redirect examination that Ms. Lawson stated that she had signed the will outside the presence of Ms. Ware. At the conclusion of redirect, counsel for Ms. Howell had an opportunity to conduct recross examination, but chose not to do so. To the extent that a credibility issue was raised by the inconsistency in Ms. Lawson's deposition testimony and the attestation clause of the will, counsel for Ms. Howell had the duty to explore that issue on recross examination.[18] Nothing in the record demonstrated that counsel for Ms. Howell was impeded in any manner from questioning Ms. Lawson further.[19] Ms.

---

17. It should be noted that a trial " 'judge may ask questions for the purpose of clearing up points that seem obscure, and supplying omissions which the interest of justice demands[.]' " *Alexander ex rel. Ramsey v. Willard,* 208 W.Va. 736, 742, 542 S.E.2d 899, 905 (2000) (per curiam) (quoting *Nash v. Fidelity–Phenix Fire Ins. Co.,* 106 W.Va. 672, 679, 146 S.E. 726, 728 (1929)). *See* Cleckley, *Handbook on Evidence,* § 6–14 ("Rule 614(b) explicitly allows the trial judge to interrogate witnesses, whether called by the parties or the court.").

18. In discussing the issue of examination of a witness, Professor Cleckley has made the following observations:

Although the witness may have told the truth on [re]direct, s/he may not have told the whole story.... Someone must probe for the remaining facts, qualify circumstances, and ensure that the testimony is accurate, complete, and

clearly understood. The best person to do this is the one most vitally interested, the opponent. Cleckley, *Handbook on Evidence,* § 6–11(F)(2)(a).

19. Counsel for Ms. Howell did not raise any objection to an error or irregularity that prevented further examination of Ms. Lawson during her deposition. Under Rule 32(d)(3)(B) of our rules of civil procedure, any "errors and irregularities at an oral deposition ... which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition." Cleckley, et al., *Litigation Handbook,* § 32(d)(3)(B). *See Page v. Columbia Natural Resources, Inc.,* 198 W.Va. 378, 395, 480 S.E.2d 817, 834 (1996) ("Had appellants objected to the expert's method of calculation during the deposition, he may have been able to testify regarding alternate methods of calculation. Because appellants failed to object, we deem this error waived.").

Howell's "counsel was accorded what was essentially a full and fair opportunity to [re-]cross-examine the witness to ensure that she was telling the truth." *Cury v. Philip Morris USA,* 1995 WL 594856, *2 (S.D.N.Y.). Ms. Howell's "counsel did not, indeed could not, contend that his [re]cross was limited in any way except by his own choice." *Wright Root Beer Co. of New Orleans v. Dr. Pepper Co.,* 414 F.2d 887, 890 (5th Cir.1969). Consequently "[a]ny harm resulting from [counsel's] decision not to [re]cross-examine at that time, is due solely to [counsel's] own refusal to act." *Mark IV Properties, Inc. v. Club Development & Management Corp.,* 12 B.R. 854, 860 (S.D.Cal.1981). *See State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996) ("The rule in West Virginia is that ... if [parties] forget their lines, they will likely be bound forever to hold their peace."). Thus, the trial court erred in granting a new trial on the grounds that there was insufficient opportunity to investigate and inquire into Ms. Lawson's credibility.[20]

## IV.

## CONCLUSION

The circuit court's order granting Ms. Howell a new trial is reversed, and the jury's verdict in favor of the Appellants is reinstated.

Reversed.

---

**20.** The Appellants also made an assignment of error involving the long delay that occurred between Ms. Howell's motion for a new trial and entry of the order granting a new trial. We need not address this assignment of error in view of our resolution of the credibility issues.