STATE OF WEST VIRGINIA

**Shelli E. Smith,**
**Respondent Below, Petitioner**

**vs) No. 14-0851** (Kanawha County 14-AA-30)

**The Board of Education of Berkeley**
**County and Russell L. Fry, Acting**
**Executive Director, WorkForce**
**West Virginia, and Jack Canfield,**
**Chairman, Unemployment Board**
**of Review, Petitioners Below, Respondents**

**FILED**

May 15, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Shelli E. Smith, by counsel Roger D. Forman, appeals the final order of the Circuit Court of Kanawha County, entered on July 23, 2014, reversing a decision of the WorkForce West Virginia Board of Review ("the Board of Review") wherein the Board of Review ruled that petitioner was not disqualified from the receipt of unemployment benefits. Respondent Board of Education of Berkeley County appears by counsel Justin M. Harrison and Jessie F. Reckart.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was an English teacher at Martinsburg High School from 1998 until the termination of her employment in 2013. She shared a classroom and "co-taught" with Kate Springer, also an English teacher.[1] Ms. Springer distributed a syllabus to her classes that noted: "I am sensitive and sensitive to all forms of Axe Body Wash, deodorant, sprays and lotions. I am also sensitive and sensitive to all forms of Victoria's Secret lotions and [sprays]. Please avoid wearing these to my class. Thank you!" (Emphasis in original.)

---

[1] It appears that Ms. Springer was the classroom teacher, and petitioner was responsible for certain students in the class who may have required special education.

Around February or March of 2013, while Ms. Springer was in the hallway and petitioner remained in the classroom, several students sprayed Axe products, particularly in the area of Ms. Springer's desk. This incident is referred to by the parties as "Axe the Teacher Day."[2] Neither petitioner nor Ms. Springer reported this incident at the time it occurred. However, Ms. Springer testified at a Board of Education hearing conducted in October of 2013 that the incident caused her severe breathing problems that led to her seeking treatment from an Urgent Care facility, and that she missed four and a half days of work because of her condition.

On May 22, 2013, the mother of petitioner's student, Tyler N., contacted the assistant principal of Martinsburg High School, Trey Arvon, and complained that her son had received from petitioner a score of zero on a test because Tyler talked during the test. Assistant Principal Arvon arranged a meeting with the mother and petitioner, and during that meeting the mother brought Axe the Teacher to Mr. Arvon's attention. When the incident was raised at the meeting, petitioner called it a "joke." This was the first instance that Mr. Arvon heard of Axe the Teacher. He placed petitioner on paid leave and initiated an investigation. Mr. Arvon requested statements, written separately but simultaneously, from four students that same day: Tyler, Cain M., Kelsea S., and Josh M. Each of these students explained that petitioner conceived Axe the Teacher Day. Cain wrote in his statement that petitioner directed a student to cry to lure Ms. Springer into the hallway so that the students could spray the products, and that she directed another student to spray Ms. Springer's chair and personal belongings. Josh wrote in his statement, "Miss said she wanted her dead."

By letter dated June 18, 2013, Berkeley County Superintendent of Schools Manny Arvon II informed petitioner that he would recommend that the Board of Education terminate her employment for her part in Axe the Teacher. In that letter, he referred to a prior incident that occurred in 2006, in which petitioner wrote a threatening note to another teacher, subsequent to which he recommended petitioner's termination.[3] Superintendent Arvon's letter reflects that petitioner was permitted to retain employment after the 2006 incident if she met certain conditions, including submission to a psychiatric examination. There is no dispute that petitioner complied with the conditions imposed for the earlier incident. Subsequently, on July 16, 2013, Superintendent Arvon sent petitioner a supplemental letter informing her that a second basis for

---

[2] One of the student witnesses testified that this is a play on the phrase "ask the teacher."

[3] The note written by petitioner included the following statement:

> Take this as the "<u>threat</u>" that it's intended to be. Either shut your f---in' lying mouth about the others <u>now</u> or something <u>very</u> <u>bad</u> <u>will</u> happen to you. I know where you live, shop, and go everyday—you are being watchers 24/7. What goes on at Opequon is none of your fat, f---ing concern. You've had your last warning! P.S. Let your f---in' over-weight boss know she snoops around causing trouble . . . <u>she's</u> <u>next</u>!!

(Emphasis and errors in original.) There is no explanation of the context of this note contained in the appendix record on appeal.

his recommendation of termination was that she lacked certification to teach special education in the State of West Virginia. Petitioner lacked certification because the superintendent refused to recommend the continuation of her certification.

The Board of Education considered Superintendent Arvon's recommendation at a meeting scheduled in October of 2013, during which time the Board of Education conducted a hearing on the matter.[4] Petitioner was represented by counsel at that hearing, and the Board heard testimony, including that of petitioner, several students, and Assistant Principal Arvon.[5] The assistant principal eventually (by August of 2013) had collected statements from every student that had been present in the classroom on Axe the Teacher Day. He testified before the Board of Education that the "gist" of those statements

> was kind of all over the place. I mean we had the four . . . on the 22nd. I had some students say that they had no recollection of the event. A couple students said [petitioner] was in the room and she heard about the plot and did nothing. And some students were stating Ms. Smith was innocent.

Petitioner testified that she saw a female student, whom she could not name, spray something. She further testified:

> The only student that I saw spray anything was [E.T.] . . . and as quick as he could spray it I yelled at him. And he said, Ms. Smith, why are you yelling now? I do this every day. And I said, you spray Axe every day in here? And he said, why I spray it before I come into the classroom because I just come from PE class. And would you rather smell this or would you rather smell—and he just pointed to himself.

> And it happened so quickly I couldn't stop it. I couldn't have grabbed the can. I mean he was across the room from me. And that was the only spraying that I witnessed. And like I said, it was just so fast. He whipped the can out and he sprayed it, and that was—and one of the girls sprayed it behind my back. . . .

---

[4] No party challenges the use of the testimony taken before the Board of Education in the subsequent proceedings.

[5] The four students who gave the written statements on May 22 confirmed their statements. Statements offered after May 22, and confirmed at the Board of Education hearing, included information from different students as follows: 1) that petitioner had no part in the plan, but was in the room at the time Axe the Teacher Day was discussed by students; 2) that "everyone brought it and sprayed each other" and petitioner neither stopped nor encouraged the spraying; 3) the students conceived the event and petitioner had no part; 4) petitioner had told the students not to do it, but they engaged in the spraying when petitioner stepped out of the room to let a bug out. One student wrote a statement supporting petitioner in petitioner's presence, at a local coffee shop. Petitioner later had pizza in the park with some of the students who supported her.

3

In fact [Topanga S., a female student who had written a letter on petitioner's behalf,] told me the next day that she said, you know how I'm always the last one to leave the classroom? And I said yes. You know she walks home. And she said, Ms. Springer told me that it smelled good. And that's—you know that's the only time that—and I said well that's—you know that's wonderful. . . .

Petitioner also testified that she told Assistant Principal Arvon that Axe the Teacher Day was a joke, and that Ms. Springer had no reaction to the products. In addition, Carolyn Munroe, a substitute teacher who had covered Ms. Springer's class immediately before Axe the Teacher Day testified that when she informed the class that Ms. Springer would be returning, "they started pleading with [her] to stay" and "started talking about this perfume situation" to keep Ms. Springer away. Ms. Munroe testified that she and petitioner instructed the students that they should not conspire against teachers.

On the day following the Board of Education meeting, October 3, 2013, Superintendent Arvon sent petitioner a letter, by certified mail, informing her that the Board of Education had voted to terminate her employment.[6]

Petitioner had filed a claim for unemployment benefits some months earlier, on July 14, 2013, and the WorkForce West Virginia deputy found that she was disqualified from receipt of benefits for gross misconduct. Petitioner appealed that decision, and on November 12, 2013, an administrative law judge conducted a hearing at which only petitioner and Superintendent Arvon appeared to offer testimony.[7] By decision entered on November 20, 2013, the administrative law judge reversed the deputy's decision, based on the administrative law judge's having credited Ms. Munroe's testimony that petitioner discouraged students from implementing Axe the Teacher Day, and having credited petitioner's testimony that she was not involved with Axe the Teacher Day. The administrative law judge further found that the evidence taken from the

---

[6] Petitioner filed a Level III grievance with the Public Employees Grievance Board. The administrative law judge who heard her grievance entered a decision on July 2, 2014, ordering petitioner reinstated with back pay on the ground that petitioner's "involvement is sketchy at best." The matter is now on appeal before this Court. The transcript of that hearing was not available to the WorkForce West Virginia administrative law judge, and any evidence taken at that hearing is not relevant to this appeal.

[7] The record reflects that petitioner was accompanied by student Topanga S., but Topanga gave no testimony. With regard to petitioner's testimony at that hearing, we note that it was remarkably brief in that the substantive testimony effectively consisted of less than one page. Petitioner testified about her job history, title, and salary, but offered no testimony concerning the events of Axe the Teacher Day or the circumstances of the termination of her employment. In contrast, Superintendent Arvon testified about the hearing before the Board of Education, the investigation concerning Axe the Teacher Day, and the decision to terminate petitioner's employment. The administrative law judge's consideration of petitioner's view of the case, then, was gleaned nearly entirely from the record created at the Board of Education hearing.

4

students was so "evenly balanced" that petitioner must be given the benefit of the doubt. The Board of Education appealed the administrative law judge decision to the Circuit Court of Kanawha County.

In an order entered on July 23, 2014, the circuit court wrote that (1) the administrative law judge erroneously found that petitioner "credibly testified at the Board of Education hearing," and (2) there was no indication in the record that either the Board of Review or the administrative law judge had discredited Superintendent Arvon's testimony. The court opined that some of the students' statements were questionable because of petitioner's "evident attempt to influence her students' testimony" through pizza and coffee dates. The court also determined that the Board "presented evidence that [petitioner's] involvement in 'Axe the Teacher Day' and knowledge of Ms. Springer's allergies to certain perfumes and colognes rises to a level of seriousness equal to or exceeding the threatening note she sent to another teacher in 2006. In 2006, she threatened harm; in 2013, she sanctioned it." The court found that a preponderance of the evidence showed gross misconduct on the part of petitioner, warranting disqualification from the receipt of benefits. It reversed the decision of the Board of Review and ordered the deputy's decision reinstated. Petitioner filed a motion to alter or amend judgment and/or reconsider the final order, based in part on the final order's having been entered by the circuit court hours prior to the filing of petitioner's responsive brief. The circuit court denied that motion by entry of a second "final order" on July 31, 2014. This appeal followed.

On appeal, petitioner asserts three assignments of error. First, she argues that the circuit court erred in reasoning that the substantial deference owed to the finding of the WorkForce West Virginia Board of Review "evaporates when a court of record does not hear live testimony but rather depends on depositions or transcripts." Second, she argues that the circuit court's finding that petitioner engaged in gross misconduct is not supported by the record. Finally, she argues that the circuit court violated its own time frame order, inasmuch as the court entered its final order hours before petitioner filed her responsive pleading with the court. We review these assignments of error under the umbrella of the following considerations: "The findings of fact of the [Board of Review of WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*." Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994). Unemployment compensation claims are to be liberally construed in favor of employees due to the remedial nature of the unemployment compensation statutes. *Childress v. Muzzle*, 222 W.Va. 129, 133, 663 S.E.2d 583, 587 (2008). However, "it is also important for the Court to protect the unemployment compensation fund against claims by those not entitled to the benefits of the Act." *Id.*, 222 W.Va. at 133, 663 S.E.2d at 587. Likewise, "we believe that the basic policy and purpose of the Act is advanced . . . when benefits are denied to those for whom the Act is not intended to benefit[.]" *Id.*, 222 W.Va. at 133, 663 S.E.2d at 587.

In her first assignment of error, petitioner urges the Court to restore the "substantial deference" owed by the reviewing courts to the WorkForce West Virginia Board of Review, according to the standard of review expressed by this Court as explained above. We agree with the circuit court, however, that this case presents the rare circumstance wherein application of the requisite deference is not supported by common sense. Justice Benjamin explained the

foundation of our grant of deference in a concurring opinion filed in *Kanawha County Bd. of Education v. Sloan*: "A fact-finder . . . has the advantage of a three dimensional view of facts, including not just the black and white of what was said, but also witness demeanor and tone. On appeal, we are limited to a two-dimensional review of the facts as revealed in the written transcript of what was said, without the benefit of visually and audibly observing the witness' demeanor and tone." 219 W.Va. 213, 222, 632 S.E.2d 899, 908 (2006). As this Court has also explained, "we must afford the lower tribunal's findings great weight [where] the factual determinations largely are based on witness credibility." *Board of Educ. of Mercer v. Wirt*, 192 W.Va. 568, 579, 453 S.E.2d 402, 413 (1994).

In the matter now before the Court, however, the Board of Review was privy to no more than the two-dimensional view later utilized by the circuit court. In fact, the only body in a position to fully observe the witnesses' demeanor and tone was the Board of Education, which ultimately voted to terminate petitioner's employment. As the circuit court noted, it is only logical that "deference evaporates when a credibility determination is made from testimony presented in a deposition." *Ware v. Howell*, 217 W.Va. 25, 28-29, 614 S.E.2d 464, 467-68 (2005).[8] To expand on the circuit court's explanation, we look to our sister court in Tennessee, which provided a clear explanation (quoted in part by this Court in *Ware*) of the equalization resulting when testamentary evidence emanates from a stack of paper rather than a warm body:

> In contrast, appellate review of documentary proof, such as depositions or other forms of testimony presented to the trial court in a "cold" record, differs considerably. When reviewing documentary proof, all impressions of weight and credibility are drawn from the contents of the evidence, and not from the appearance of witnesses and oral testimony at trial. [Citations omitted.] As a result, appellate courts may make an independent assessment of the credibility of the documentary proof it reviews, without affording deference to the trial court's findings. [Citation omitted.] This rule is premised on the fact that appellate courts are in just as good a position as the trial court to judge the credibility of witnesses who provided the proof. . . .

*Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783-84 (Tenn.1999).

Applying this common sense approach to the issue on appeal, we find that the circuit court more capably assessed the documentary evidence before it than did the Board of Review, and we thus further find that the circuit court corrected clear error in the Board of Review's

---

[8] Petitioner urges us to disregard *Ware*, a per curiam opinion addressing issues in a will contest. Though we recently determined that "per curiam opinions are a relatively recent phenomenon whose existence has been rendered unnecessary by the substantial expansion of merits decisions under the new appellate process" (*State v. McKinley*, 234 W.Va. 143, ___, 764 S.E.2d 303, 313 (2014)), it has long been the express position of this Court that "[a] per curiam opinion may be cited as support for a legal argument." Syl. Pt. 4, *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001)(overruled on other grounds by *McKinley*, 234 W.Va. 143 at ___, 764 S.E.2d at 313). Furthermore, we find the principles set forth in the body of this opinion no less applicable to the instant context than to the situation described in *Ware*.

analysis. Our determination on this issue begins with the recognition that the first witnesses consulted by Assistant Principal Arvon provided consistent statements concerning petitioner's involvement in Axe the Teacher Day on the very day that the assistant principal initiated his inquiry, and the witnesses at that time had little or no opportunity to coordinate their accounts.[9] We then recognize that the "even balance" of the students' statements, a factor on which the Board of Review heavily relied, was created in part by some students stating that they had no knowledge of the Axe the Teacher Day events, and others generally proclaiming petitioner's innocence. We find these statements unreliable, inasmuch as petitioner acknowledged at the Board of Education hearing that Axe the Teacher Day did, in fact, occur. By petitioner's own admission, when initially confronted by the mother of Tyler N., she "just to be able to leave . . . did say it was a joke. And . . . did say, to reassure her, that Ms. Springer did not have any reaction to it." She further testified that while she was in the classroom on Axe the Teacher Day, one of the female students sprayed a substance that caused her to cough, and then she witnessed a specific male student spray a substance, after which another female student sprayed a substance behind her back.[10] Based on this testimony, any statement denying the occurrence of Axe the Teacher Day is inherently incredible. All that is left to determine, then, is petitioner's degree of culpability in the event. In this regard, we observe that petitioner, at a minimum, saw at least three students spray substances in the classroom she shared with a woman who had professed extreme sensitivity to such substances, and that she herself was affected by the spraying. Nevertheless, despite her assertion that she had counseled the students not to engage in such behavior, she neither cautioned her co-worker not to enter the classroom, nor disciplined the students or otherwise reported the incident. In light of these facts, we find the consistent accounts of the four students first consulted by Assistant Principal Arvon extremely compelling, and find no error in the circuit court's credit of the same.[11]

---

[9] We find no support in the record for petitioner's speculation that Tyler N.'s mother "worked out this story" with Tyler and the other three initial witnesses as retribution for the score of zero that petitioner gave Tyler.

[10] Unlike the circuit court, however, we hesitate to find, without further factual development, impropriety in the instance of one student's having met with petitioner and her attorney in a coffee shop, or in the instance of petitioner's having purchased pizza for certain students after the Board of Education hearing. Nevertheless, even without identifying witness bias in these occasions, we find sufficient basis in the record for the circuit court's reversal of the Board of Review decision.

[11] We are unpersuaded by petitioner's argument that Ms. Springer's attendance records show that the incident could not have caused Ms. Springer to miss work for four days as described in her account, because that argument requires a determination that Axe the Teacher Day occurred in February. The incident was not reported at the time that it occurred, and Assistant Principal Arvon had no opportunity to affix a date to Axe the Teacher Day until he initiated his investigation in late May. We disagree with petitioner's assertion that the date of occurrence was conclusively established as February 19, 2013. Ms. Springer, who did not report the incident or even mention it until questioned by Assistant Principal Arvon, testified that Axe the Teacher Day occurred in March. Furthermore, we disagree with petitioner that Superintendent Arvon's testimony before the Board of Review established February 19 as the

We turn now to petitioner's second assignment of error, in which she argues that the evidence of record does not support a finding that she engaged in gross misconduct. The West Virginia Legislature has expressly stated that an employee is wholly disqualified from receiving unemployment compensation benefits if he or she has been discharged for "gross misconduct," which it defines as the

> willful destruction of his or her employer's property; assault upon the person of his or her employer or any employee of his or her employer; if the assault is committed at the individual's place of employment or in the course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; reporting to work under the influence of any controlled substance . . . without a valid prescription, or being under the influence of any controlled substance . . . without a valid prescription, while at work; adulterating or otherwise manipulating a sample or specimen in order to thwart a drug or alcohol test lawfully required of an employee; refusal to submit to random testing for alcohol or illegal controlled substances for employees in safety sensitive positions . . .; arson, theft, larceny, fraud or embezzlement in connection with his or her work; or any other gross misconduct . . . Provided, That for the purpose of this subdivision, the words "any other gross misconduct" includes, but is not limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from the act or acts.

W.Va. Code § 21A–6–3(2) (2013). We explained in *Dailey v. Board of Review*, 214 W.Va. 419, 589 S.E.2d 797 (2003), that

> we believe that the legislature's provisions regarding gross misconduct can be divided into three distinct categories: (1) those specifically enumerated acts which shall be considered gross misconduct; (2) items which may be interpreted to be "other gross misconduct;" and (3) acts of misconduct for which the employee has received prior written warning that continued violation will result in employment termination.

214 W.Va. at 427, 589 S.E.2d at 805. Inasmuch as petitioner's actions in Axe the Teacher Day are not specifically enumerated acts in the statute, and inasmuch as she was not previously warned about such conduct, we must consider whether her transgressions fall within the second category, "other gross misconduct." We recently reiterated:

> Being aware that the statutory definition could not possibly set forth every conceivable act of gross misconduct, we concluded that "[e]xcept where an employee has received a prior written warning, the phrase, 'other gross misconduct,' in West Virginia Code § 21A–6–3 evidences the legislature's intent

---

day of occurrence. Rather, he agreed with petitioner's counsel that the event "probably" occurred that day. We decline to consider petitioner's citation to the testimony of Assistant Principal Arvon that was taken at petitioner's Level III grievance hearing to establish a date, inasmuch as the same was not among the evidence considered by the Board of Review.

8

*to provide some element of discretion in the Board and reviewing courts, based upon the peculiar facts of each case.*" *Dailey*, 214 W.Va. at 421, 589 S.E.2d at 799, syl. pt. 5 (emphasis added).

*Alcan Rolled Products Ravenswood, LLC v. McCarthy*, 234 W.Va. 312, ___, 765 S.E.2d. 201, 210-11 (2014).

We find no error in the circuit court's having used this grant of discretion to find that petitioner's part in Axe the Teacher Day constituted other gross misconduct disqualifying her from the receipt of unemployment benefits.[12] As explained above, the evidence was sufficient for the circuit court to find that petitioner, an individual charged with the supervision of impressionable youth, played a significant part in the execution of a plan that could ultimately bring physical harm to her colleague. In doing so, she demonstrated complete contempt for her co-worker's safety, even going so far as to characterize the attack as a joke and to publicly question Ms. Springer's truthfulness about her chemical sensitivity. Petitioner's engagement of her students in the juvenile, yet dangerous, plot demonstrates a shocking disregard for the propriety demanded of her profession.

Finally, we find no error in the unorthodox decision of the circuit court to enter its final order without the benefit of petitioner's responsive pleading below.[13] First, as explained in detail above, the circuit court's reversal of the Board of Review decision is in itself sound. The circuit court's failure to review a pleading (which is intended to assist the court in its review) is not sufficient cause standing alone to set aside an otherwise unassailable order. Second, as aptly noted by respondents, petitioner filed a motion asking the court to reconsider the final order, in light of her perception that her responsive brief had not been reviewed. The circuit court then entered an order noting that it considered petitioner's pleading and found no reason to alter the final order. We thus find no harm in the circuit court's failure, if indeed there was such a failure, to consider petitioner's brief prior to entering the final order reversing the decision of the Board of Review.

For the foregoing reasons, we affirm.

Affirmed.

---

[12] Like the circuit court before us, we reach this conclusion without consideration of the incident for which petitioner was previously reprimanded in 2006.

[13] Petitioner explains that the final order was filed at 8:57 a.m. on July 23, 2014, and that later that same day, at 1:08 p.m., she filed her responsive brief, days before the expiration of her deadline according to the circuit court's scheduling order. No party has provided any information about the delivery of a courtesy copy of that pleading to the circuit court judge's chambers, and we will refrain from speculation on that matter.

**ISSUED:**  May 15, 2015

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISQUALIFIED:**

Chief Justice Margaret L. Workman